IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KLOECKNER METALS CORPORATION and
XL INSURANCE AMERICA, INC., *as subrogee
of* Kloeckner Metals Corporation,

    Plaintiffs,

v.

ALLIANCE WORKFORCE SOLUTIONS, LLC,

    Defendant.

Civil Action No.
1:22-cv-01530-SDG

**OPINION AND ORDER**

This matter is before the Court on Defendant Alliance Workforce Solutions, LLC's motion for summary judgment [ECF 42]. For the following reasons, Alliance's motion is **GRANTED**. Plaintiffs' untimely cross-motion for summary judgment [ECF 43] is **DENIED**.

**I.    BACKGROUND**

This case arises out of a workplace accident at Plaintiff Kloeckner Metals Corporation's warehouse, in which a truck driver was fatally crushed by a collapsing stack of metal tubing.[1] Kloeckner and its insurer, Plaintiff XL Insurance America, Inc., together paid $1 million to settle a wrongful death suit brought by the decedent's widow.[2] Plaintiffs are now seeking to recover the cost of that settlement in whole or in part from Alliance, an employment agency that provided

---

1    ECF 45, ¶ 2.

2    *Id.* ¶ 22.

1

temporary staffing services to Kloeckner,[3] asserting that the fatal tubing collapse was caused by the negligence of an Alliance employee.[4] To that end, Plaintiffs bring the following four claims under Georgia law: (1) breach of contract;[5] (2) contractual indemnity;[6] (3) contribution;[7] and (4) equitable subrogation.[8]

Plaintiffs' first and second claims are conceptually similar: they assert that Alliance has a contractual duty arising out of its staffing agreement with Kloeckner to repay Plaintiffs for the cost of settlement. Alliance seeks summary judgment on these claims, which the Court will call the "contractual claims," on the ground that the staffing contract had expired by the time the accident occurred.[9] Likewise, Plaintiffs' third and fourth claims are conceptually similar: they assert that Plaintiffs fronted the cost of settlement on behalf of Alliance and are entitled to reimbursement. Alliance seeks summary judgment on these claims, which the Court will call the "non-contractual claims," on the ground that the voluntary

---

[3]   ECF 43-2, ¶ 1.

[4]   ECF 1, ¶ 14.

[5]   *Id.* ¶¶ 17–27.

[6]   *Id.* ¶¶ 28–32.

[7]   *Id.* ¶¶ 33–42.

[8]   *Id.* ¶¶ 43–49.

[9]   ECF 42-1, at 6.

nature of the settlement payment deprives Plaintiffs of a right to reimbursement as a matter of law.[10]

## II. DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Here, because the material facts—those "that might affect the outcome of the suit," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)—are limited and undisputed, and because the undisputed facts preclude Alliance's liability to Plaintiffs under any asserted claim as a matter of law, Alliance's motion for summary judgment is granted in its entirety.[11]

### A. Alliance Is Entitled to Summary Judgment on the Contractual Claims.

Alliance seeks summary judgment on the contractual claims on the uncontroversial ground that a contract that terminated in 2015 cannot provide a cause of action for an accident that occurred in 2019. The following relevant facts are undisputed:

---

[10] *Id.* at 13.

[11] Plaintiffs embedded a purported cross-motion for summary judgment into their response brief to Defendant's motion. ECF 43. Plaintiffs' cross-motion, filed weeks after the dispositive motions deadline without explanation, is denied as untimely. However, the fact that both parties have moved for summary judgment is consistent with the Court's ruling that the dispositive facts here are undisputed.

- The contract at issue is the "Master Warehouse and Driver Temporary Staffing Agreement" between Alliance and Kloeckner (the Agreement),[12] drafted by Kloeckner[13] and governed by Georgia law;[14]

- The parties executed the Agreement in November 2013,[15] for a term of two years;[16]

- The tubing-collapse accident occurred in 2019.[17]

- The Agreement had an indemnity provision at section 6.1, under which Alliance agreed to indemnify Kloeckner from any liability arising out of an Alliance worker's negligence;[18] and

- The Agreement contained survival provisions at sections 7.3 and 8.5 referencing indemnity.[19]

The interpretation of said survival provisions is at the crux of the parties' dispute. Plaintiffs assert that the survival provisions provide a right to indemnity for acts of negligence occurring after the Agreement's termination, even when those acts are committed by Alliance workers supplied to Kloeckner under a *different* employment contract.[20] Alliance, by contrast, asserts that the survival provisions

---

[12] ECF 43-2, ¶ 1.

[13] *Id.*

[14] *Id.* ¶ 5.

[15] *Id.* ¶¶ 3–4.

[16] *Id.* ¶ 4.

[17] ECF 45, ¶ 2.

[18] *Id.* ¶ 7.

[19] *Id.* ¶ 9.

[20] ECF 43-1, at 5. This argument—that the Agreement's survival provisions should be interpreted to confer a right to indemnity unlimited by the

give Plaintiffs a right to indemnity after the Agreement's termination *only* for events that occurred during the Agreement's term.[21] The correct interpretation of the Agreement's survival provisions is a matter of Georgia contract law.[22]

Under Georgia law, contract interpretation is about "ascertain[ing] the intention of the parties." O.C.G.A. § 13-2-3. If the parties' intent is unambiguous based on the clear text of the contract, courts simply enforce that unambiguous meaning. *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1237 (11th Cir. 2019) (citing *City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19 (2013)). "A contract is unambiguous when, after examining the contract as a whole and affording its words their plain meaning, the contract is capable of only one reasonable interpretation." *Id.* If the contract is ambiguous—that is, capable of more than one

---

Agreement term—is the only one raised in Plaintiffs' response brief. At oral argument, Plaintiffs at least hinted at an alternative argument: that the Agreement renewed upon its expiration by virtue of the parties' continuing performance. ECF 47. Even assuming that Georgia law would support such a theory—and Plaintiffs have not provided case law indicating that it would—Kloeckner could only have reasonably believed the Agreement's terms to have continuing effect through August 23, 2019, on which day Alliance indisputably declined Kloeckner's offer to formally renew the Agreement. ECF 43-2, ¶ 8. At that point, Kloeckner was put on notice that it could no longer rely on the Agreement to govern its relationship with Alliance. Because the tubing-collapse accident occurred on September 16, 2019, *after* Alliance affirmatively declined Kloeckner's invitation to renew, Kloeckner cannot seek enforcement of the Agreement under a theory of equitable renewal. ECF 45, ¶ 2.

21   ECF 44, at 6.

22   The Agreement, by its terms, is governed by Georgia law. ECF 1-1, at 9.

reasonable interpretation—courts resolve the ambiguity as a matter of law by applying Georgia's principles of contract interpretation. *Id.*

Here, the Agreement unambiguously precludes Plaintiffs' contractual claims because its survival provisions can reasonably be read only one way: as applying to obligations incurred *during the Agreement's term*. Section 7.3 provides as follows:

> <u>Survival of Obligations</u>. Kloeckner Metals' obligation to pay [Alliance] for Workers provided by [Alliance] and each Party's indemnification obligation shall survive the termination of this Agreement."[23]

Section 7.3 thus provides for the survival of *obligations*, as opposed to the legal relationship giving rise to those obligations. As the Eleventh Circuit explained in *Silverpop Systems, Inc. v. Leading Market Technologies, Inc.*: "[A]n expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied." 641 F. App'x 849, 857 (11th Cir. 2016) (quoting *Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 206 (1991)). The only reasonable construction of section 7.3, in light of the Agreement as a whole, is as ensuring no party can avoid already-incurred obligations by waiting out the Agreement's termination. It is not reasonable to read the survival provisions as overriding the termination of the

---

[23]   ECF 1-1, at 8.

underlying relationship, or as creating an independent and indefinite right to indemnity for obligations arising out of other contracts. Thus, Kloeckner has a continuing obligation to pay Alliance's workers for services provided during the Agreement's term—but Alliance workers do *not* have a right to payment under the Agreement for services provided *after* the Agreement terminated. Likewise, Alliance has a continuing obligation to indemnify Kloeckner for acts of negligence committed by Alliance's workers during the Agreement's term—but Kloeckner does *not* have a right to indemnity under the Agreement for acts of negligence committed *after* the Agreement terminated.

> In accord with section 7.3 is section 8.5, which provides as follows:
>
>> Survival. The provisions of this Agreement, which by their nature are intended to survive termination or expiration of this Agreement, shall so survive and continue to operate prospectively following termination or expiration. This includes confidentiality, indemnity, warranty provisions as well as this Section 7.5 [sic].[24]

The named provisions naturally survive because they impose obligations that, though arising out of the Agreement, are not reasonably terminated at the same time as the Agreement. Provisions governing survival, for example, must themselves survive to have any effect. Warranties in the Agreement must be actionable even after the two-year contract term expires, in no small part because

---

[24] ECF 1-1, at 9.

Georgia law permits a claim for breach of express written warranty to be brought up to six years after the breach is discovered. *Benning Const. Co. v. Lakeshore Plaza Enters, Inc.*, 240 Ga. 426, 429 (1977). It likewise makes sense that Kloeckner's confidential data should be kept confidential even after the Agreement terminates, since the data is equally confidential before and after termination. And it makes sense that an indemnity obligation incurred during the Agreement term should continue past termination since, for example, a lawsuit arising out of events that occurred during the term may not resolve before the term expires.

Yet there can be no doubt that section 8.5 only provides for the continued enforceability of the survival, warranty, confidentiality, and indemnity obligations *arising out of the Agreement*. Section 8.5 is not reasonably read as providing for the survival of provisions, or as permitting claims for breach of warranties, in *any* contract between Kloeckner and Alliance. Likewise, section 8.5 is not reasonably read as giving Kloeckner a right to sue Alliance for revealing *any* confidential information, regardless of how it was accessed. And, dispositive here, it is not reasonably read as giving Kloeckner a right to indemnity for *any* accident, regardless of when it occurred. To hold otherwise would be to read into the Agreement an intent for the parties to indemnify each other against all losses forever. This the Court declines to do.

The Court notes that it would reject Plaintiffs' reading of the Agreement's survival provisions even if the provisions were ambiguous, that is, even if they could reasonably be read as requiring Alliance to indemnify Plaintiffs for an accident occurring after the Agreement's termination. Contractual ambiguities should be "construed against the preparer and in favor of the non-preparer." *Hertz Equip. Rental Corp. v. Evans*, 260 Ga. 532, 532 (1990) (citing O.C.G.A. § 13-2-2-(5)). Here, because the parties agree that Kloeckner drafted the Agreement, any ambiguity therein would be resolved against Kloeckner. Thus, ambiguous or not, the Agreement must be read as providing a right to indemnity only for accidents occurring during its term. Because the accident in question indisputably occurred after the Agreement expired, Alliance is entitled to judgment on Kloeckner's contractual claims as a matter of law.

### B.  Alliance Is Entitled to Summary Judgment on the Non-Contractual Claims.

Alliance seeks summary judgment on the non-contractual claims on the ground that Plaintiffs' settlement payment was voluntary, and claims for contribution and subrogation arising out of voluntary settlement payments fail as a matter of Georgia law. The material facts are again undisputed:

- The decedent—Sylvester Roulhac—was a truck driver employed by ProDrivers Transport Company,[25] who died while working at a Kloeckner warehouse;[26]

- Roulhac was furnished by ProDrivers to Kloeckner as a temporary driver, pursuant to a staffing contract,[27] whenever "a need for a temporary driver arose";[28]

- The staffing contract describes ProDrivers as a provider of "temporary driver and/or warehouse workers to manufacturing, processing and distribution companies, including companies that perform activities identical or similar to the activities performed by Kloeckner Metals."[29]

- Under section 2.3 of the staffing contract, temporary workers remained employees of ProDrivers;[30]

- Under section 2.7 of the staffing contract, temporary workers were required to "abide by all of Kloeckner Metals' rules, regulations, and policies whenever performing any work, duties or tasks for Kloeckner Metals";[31] and

- Under section 5.2 of the staffing contract, ProDrivers did *not* provide its temporary workers with instructions on how to perform the services for which they had been engaged.[32]

---

[25] ECF 43-2, ¶ 9.

[26] ECF 45, ¶ 2.

[27] *Id.* ¶ 3.

[28] ECF 43-2, ¶ 12.

[29] ECF 42-5, at 2.

[30] *Id.* at 3. ("Worker Relationship. [Alliance] hereby affirms that the Workers furnished under this Agreement are: (a) employees of [Alliance] and (c) [sic] will not be deemed to be employees of Kloeckner Metals.").

[31] *Id.* at 4.

[32] *Id.* ("Training. Although the Workers will be working at a Kloeckner Metals' facility, [Alliance] shall provide them with only such direction and instruction as is necessary for them to independently perform the Services that they have

Under these facts, the Court agrees with Alliance that (1) Kloeckner was immune from liability for Roulhac's death, meaning (2) Plaintiffs' settlement of the Roulhac wrongful death suit was voluntary and Alliance is accordingly entitled to judgment on Plaintiffs' non-contractual claims as a matter of law.

First, the undisputed facts establish that Kloeckner was immune from liability for Roulhac's death under Florida workers' compensation law.[33] Under that law, employers are entitled to workers' compensation immunity from liability to "help supply services company" workers injured while "acting in furtherance of the employer's business." Fla. Stat. § 440.11(2). Section 440.11(2), by reference to the North American Industry Classification System (NAICS), defines "help supply services" as follows:

> This industry comprises establishments primarily engaged in supplying workers to clients' businesses for limited periods of time to supplement the working force of the client. The individuals provided are employees of

---

been selected to perform. … This shall *not* include instructions as to how to perform the Services for which the Worker was engaged, whether warehouseman or driver." (emphasis added)).

[33] The Court agrees with the parties that Florida law applies to the issue of Kloeckner's liability for Roulhac's death. ECF 42-1, at 16 n.3; ECF 43-1, at 11–23. A federal court sitting in diversity must apply the choice-of-law rules of the forum state, here Georgia. *Boardman Petrol., Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998). Georgia's choice-of-law rules dictate that "a tort action is generally governed by the substantive law of the place where the tort was committed." *Harvey v. Merchan*, 311 Ga. 811, 813 (2021). The parties agree that the alleged tort was committed at Kloeckner's facility in Florida, meaning Florida law governs Kloeckner's wrongful death liability.

> the temporary help service establishment. However, these establishments do not provide direct supervision of their employees at the clients' work sites.

NAICS Code 561320. And Roulhac was indisputably a "help supply services" employee under § 440.11(2): he was supplied to Kloeckner by the employment agency ProDrivers as a temporary worker; remained a ProDrivers employee even while working for Kloeckner; was directly supervised, not by ProDrivers, but by Kloeckner while at Kloeckner's worksite; and was, at the time of his death, furthering Kloeckner's business as a driver at its warehouse.

Instructive here is the Florida District Court of Appeal's discussion of workers' compensation immunity in *Baker v. Airguide Manufacturing, LLC*, 151 So. 3d 38 (Fla. Dist. Ct. App. 2014). As the *Baker* court explained, employers sometimes "utilize other companies' employees to complete their work under circumstances indicating that the borrowing employer is the de facto employer of the borrowed employee at the time of the injury." *Id.* at 41. In such cases, Florida law extends workers' compensation immunity to the "borrowing" employer in two alternative ways. One is through the common law "borrowed servant" doctrine; the other is under § 440.11(2). *Id.* Establishing immunity under the common law entails "a substantial factual inquiry" into the employment relationship at issue; by contrast, establishing immunity under § 440.11(2) "requires only that the [borrowing] employer demonstrate that the employee was acquired from a help supply service

company," and can be amenable to resolution at summary judgment. *Id.* at 42. The *Baker* court accordingly upheld a grant of summary judgment on workers' compensation immunity grounds, where an injured worker was employed by a company that "leases professional workers and manual laborers to various companies throughout the United States for a fee," and had suffered her injury while leased to a manufacturing company to meet its labor demands. *Id.* Similarly, because it is undisputed that Roulhac's employer ProDrivers was in the business of leasing drivers and warehouse workers to various companies for a fee, and because it is undisputed that Roulhac was killed while leased to Kloeckner to meet its labor demands, Kloeckner is immune from liability for Roulhac's death as a matter of law.

Second, because Kloeckner is immune, Plaintiffs' settlement payment was voluntary, and Plaintiffs do not have a claim for contribution or subrogation as a matter of law. Under Georgia law, a plaintiff cannot assert claims for contribution or subrogation to recover voluntary payments to third parties. *GAF Corp. v. Tolar Constr. Co.*, 246 Ga. 411, 411 (1980) (contribution); *Federated Mut. Ins. Co. v. Northland Ins. Co.*, 254 Ga. 402, 402 (1985) (subrogation).[34] Georgia courts have

---

[34] The Court adopts the parties' assumption that the non-contractual claims should be analyzed under Georgia law. ECF 42-1, at 13–18; ECF 43-1, at 7–13. The Court notes that it would reach the same result if the claims were analyzed under Florida law. *State, Dep't of Transp. v. V.E. Whitehurst & Sons, Inc.*, 636 So. 2d 101, 105 (Fla. Dist. Ct. App. 1994) (barring contribution claim where plaintiff

13

explained that "a defendant's payment to an injured party is considered 'voluntary' if it was made in the absence of allegations showing a legal necessity for payment." *Emergency Pros. of Atlanta, P.C. v. Watson*, 288 Ga. App. 473, 476 (2007) (in the contribution context); *accord Franco v. Cox*, 265 Ga. App. 514, 515 (2004) (in the subrogation context, explaining that a party who "pays the debt of another" while "under no legal obligation to make the payment" is a "mere volunteer"). Because Plaintiffs' settlement payment was made without legal necessity, it was voluntary, and Plaintiffs' non-contractual claims must fail.

The *Emergency Professionals* and *Federal Mutual* cases are particularly analogous. In *Emergency Professionals*, an employment agency brought a contribution claim to recover the cost of a default judgment in a wrongful death suit involving one of its workers. 288 Ga. App. at 474–75. The trial court granted summary judgment against the employment agency because its worker's status as an independent contractor, which could be established through undisputed facts as a matter of law, would have provided a complete defense to the employment agency's liability for wrongful death. *Id.* at 476. The appellate court affirmed, explaining that the existence of "[a]ny defense showing the lack of a legal

---

is immune from underlying liability under workers' compensation law); *Welch v. Complete Care Corp.*, 818 So. 2d 645, 648–49 (Fla. Dist. Ct. App. 2002) (barring equitable subrogation claim in same situation).

compulsion to pay is sufficient to defeat a claim for contribution." *Id.* Here, like in *Emergency Professionals*, there is a claim for contribution arising out of a wrongful death suit involving an employment agency worker. Here, like in *Emergency Professionals*, the worker's employment status, which can be established through undisputed facts as a matter of law, would have provided a complete defense to liability in the underlying wrongful death suit. And here, like in *Emergency Professionals*, the existence of such a defense is a sufficient basis to grant summary judgment against Plaintiffs on their contribution claim.

Likewise, in *Federated Mutual*, an insurer brought a subrogation claim to recover the cost of certain benefits paid after a fatal car accident. 354 Ga. at 402. The insurer believed it was legally required to pay said benefits, based on its reading of binding precedent. *Id.* The insurer was wrong: the Supreme Court of Georgia held that the insurer had been under no obligation to pay the benefits, concluded that its benefits payment was voluntary, and affirmed judgment against the insurer on its subrogation claim. *Id.* Here, like in *Federated Mutual*, because it can be determined as a matter of law that Plaintiffs had no obligation to pay for Roulhac's death, the Court concludes that Plaintiffs' settlement payment was voluntary, and enters judgment against them on their subrogation claim.

Plaintiffs' various rebuttals miss the mark. Plaintiffs point out that Georgia law permits settlement payments to be recovered through actions for contribution

15

and subrogation,[35] and that is true—*except*, of course, when those settlements were paid voluntarily. Plaintiffs also suggest that Kloeckner may not have been protected by workers' compensation immunity if Roulhac does not satisfy the three-part common-law "borrowed servant" test, citing to *Sagarino v. Marriott Corp.*, 644 So. 2d 162, 165 (Fla. Dist. Ct. App. 1994)[36]—but whether Roulhac was a "borrowed servant" under the common law is irrelevant since he was indisputably a "help supply services" worker under section 440.11(2). Finally, Plaintiffs assert that the record contains sufficient evidence to satisfy each element of their contribution and subrogation claims[37]—but what is otherwise in the record notwithstanding, the undisputed facts show that Plaintiffs' settlement payments were voluntary, and voluntary payments are not recoverable for contribution or subrogation under Georgia law. Alliance is accordingly entitled to judgment as a matter of law on the non-contractual claims.

### III.  CONCLUSION

Alliance's motion for summary judgment [ECF 42] is **GRANTED**. Plaintiffs' cross-motion for summary judgment [ECF 43] is **DENIED.** The Clerk of Court is

---

[35] ECF 43-1, at 8–10.

[36] *Id.* at 11–12.

[37] *Id.* at 10, 12.

**DIRECTED** to enter judgment in favor of Defendant Alliance against Plaintiffs and close this case.

**SO ORDERED** this 30th day of September, 2024.

_____
Steven D. Grimberg
United States District Judge